**FILED** DEC 11 2007

DEC 11 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| VOLVO FINANCIAL SERVICES, (f/k/a Volvo Commercial Finance) a division of VFS US LLC, a Delaware limited liability company, ) ) ) ) ) | |
| Plaintiff, ) | **07CV6957** |
| ) | **JUDGE ANDERSEN** |
| v. ) | **MAG. JUDGE COLE** |
| IRENEUSZ WOJCIECHOWICZ, individually, ) ) ) | |
| Defendant. ) | |

## COMPLAINT

**NOW COMES** the Plaintiff, VOLVO FINANCIAL SERVICES, a division of VFS US LLC, a Delaware limited liability company ("VOLVO FINANCIAL"), by and through its attorneys, Coston & Rademacher, and complains as follows against Defendant, IRENEUSZ WOJCIECHOWICZ, individually ("WOJCIECHOWICZ").

## NATURE OF ACTION

1.     This action arises out of WOJCIECHOWICZ's refusal and failure to perform his/her obligation as buyer under Credit Sales Contracts.

## JURISDICTION

2.     Plaintiff, herein, VOLVO FINANCIAL is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Greensboro, North Carolina.

3.    On information and belief, Defendant WOJCIECHOWICZ is a citizen of the State of Illinois and resides at 1248 Edgewater Lane, Antioch, Illinois 60002.

4.    The amount in controversy exceeds $75,000.00 exclusive of interest and costs that may be heard by this Court.

5.    Jurisdiction in this Court is proper under 28 USC §1332 and Fed. R. Civ. P. 18(a).

6.    The equipment which is the subject matter of this action was shipped to Antioch, Illinois.

7.    Venue is proper in this action pursuant to 28 USC §1391(a) in that a substantial part of the events giving rise to this claim occurred in Chicago, Cook County, Illinois.

## COUNT I

## BREACH OF CONTRACT – 500-7533237-001

8.    On or about June 3, 2005, WOJCIECHOWICZ entered into a Credit Sales Contract ("Contract No. 1") with non-party S&S Volvo & GMC Truck for the purchase of the equipment described in Contract No. 1. A true and correct copy of Contract No. 1 is attached hereto and incorporated herein as Exhibit A.

9.    On or about June 3, 2005, S&S Volvo & GMC Truck assigned Contract No.1 to VOLVO FINANCIAL. A true and correct copy of Assignment No. 1 is attached hereto and incorporated herein as Exhibit B.

10.    The terms of Contract No. 1 provided for payments by WOJCIECHOWICZ in the sum of $2,137.00 per month for a period of 66 consecutive months.

11.    In reliance upon representations made by WOJCIECHOWICZ, the equipment was delivered and accepted by WOJCIECHOWICZ, Plaintiff funded the equipment vendor for WOJCIECHOWICZ.'s use of the equipment per the terms and conditions of Contract No. 1.

12.    Plaintiff has fully performed all conditions precedent and subsequent required of them in Contract No. 1.

13.    WOJCIECHOWICZ made payments under the terms of Contract No. 1 but has breached the terms of said Contract in that he/she ceased making monthly payments to VOLVO FINANCIAL.

14.    Pursuant to the terms of Contract No. 1, upon default, Plaintiff, at its option, may declare all unpaid payments immediately due and payable. Pursuant to the default, VOLVO FINANCIAL accelerated the balance due on the credit sales contract and the sum of $88,536.90 was due, plus accruing interest, costs of collection, and reasonable attorneys' fees.

15.    Plaintiff incurred repossession expenses totaling $1,848.25, which consists of:   $1,050.00 – repossession fees; $300.00 – inspection fees; and $498.25 – transportation fees.   A true and correct copy of these expenses are listed on the Deficiency Balance Calculation which is attached hereto and incorporated herein as Exhibit C.

16.    Pursuant to the terms of Contract No. 1, WOJCIECHOWICZ also agreed to pay reasonable attorney's fees incurred as a result of this action.   VOLVO FINANCIAL has incurred attorney fees herein and will continue to accrue fees.

17. Plaintiff took possession of the equipment and sold it in a reasonable manner on September 11, 2007 for the amount of $43,250.00. A true and correct copy of the Account Reconciliation Report is attached hereto and incorporated herein as Exhibit D.

18. As a proximate result of Defendant's breach of the terms of Contract No. 1, Plaintiff suffered damages in the amount of $88,536.90, repossession fees of $1,848.25, less sale proceeds of $43,250.00, for a total of $47,135.15, plus accruing interest, late fees, legal costs, and other attorneys' fees.

19. The above sum has been requested from WOJCIECHOWICZ on numerous occasions, but WOJCIECHOWICZ has failed and refused to pay such sum or any part thereof although payment has been demanded of WOJCIECHOWICZ by VOLVO FINANCIAL.

**WHEREFORE**, Plaintiff, VOLVO FINANCIAL SERVICES, a division of VFS US LLC, a Delaware limited liability company, prays judgment against Defendant IRENEUSZ WOJCIECHOWICZ, individually, in the sum of $47,135.15, plus interest, late fees, costs of this action and attorneys' fees, and such further legal and equitable relief as this Court deems appropriate.

## COUNT II
## BREACH OF CONTRACT – 500-7533237-002

20. VOLVO FINANCIAL realleges each and every allegation contained in paragraphs 1 through 19 of this Complaint and by reference thereto incorporates the same herein as though fully set forth and alleged herein.

21.     On or about July 11, 2005, WOJCIECHOWICZ entered into a Credit Sales Contract ("Contract No. 2") with VOLVO FINANCIAL for the purchase of the equipment described in Contract No. 2. A true and correct copy of Contract No. 2 is attached hereto and incorporated herein as Exhibit E.

22.     On or about July 11, 2005, S&S Volvo & GMC Truck assigned Contract No. 2 to VOLVO FINANCIAL. A true and correct copy of Assignment No. 2 is attached hereto and incorporated herein as Exhibit F.

23.     The terms of Contract No. 2 provided for payments by WOJCIECHOWICZ in the sum of $2,109.94 per month for a period of 66 consecutive months.

24.     In reliance upon representations made by WOJCIECHOWICZ, the equipment was delivered and accepted by WOJCIECHOWICZ, Plaintiff funded the equipment vendor for WOJCIECHOWICZ.'s use of the equipment per the terms and conditions of Contract No. 2.

25.     Plaintiff has fully performed all conditions precedent and subsequent required of them in Contract No. 2.

26.     WOJCIECHOWICZ made payments under the terms of Contract No. 2 but has breached the terms of said Contract in that he/she ceased making monthly payments to VOLVO FINANCIAL.

27.     That pursuant to the terms of Contract No. 2, upon default, Plaintiff, at its option, may declare all unpaid payments immediately due and payable. Pursuant to the default, VOLVO FINANCIAL accelerated the balance due on the credit sales contract

and the sum of $86,016.49 was due, plus accruing interest, costs of collection, and reasonable attorneys' fees.

28.    That Plaintiff incurred repossession expenses totaling $2,328.31, which consists of $1,050.00 – repossession fees; $300.00 – inspection fees; $650.00 – cleaning fees; $27.67 – repairs/mechanic's lien; $255.00 – transportation fees; and $45.64 – fuel/tolls. A true and correct copy of these expenses are listed on the Deficiency Balance Calculation which is attached hereto and incorporated herein as Exhibit G.

29.    That pursuant to the terms of Contract No. 2, WOJCIECHOWICZ also agrees to pay reasonable attorney's fees incurred as a result of this action. VOLVO FINANCIAL has incurred attorney fees herein and will continue to accrue.

30.    That Plaintiff took possession of the equipment and sold it in a reasonable manner on August 24, 2007 for the amount of $55,000.00. A true and correct copy of the Account Reconciliation Report is attached hereto and incorporated herein as Exhibit H.

31.    That as a proximate result of Defendant's breach of the terms of Contract No. 2, Plaintiff suffered damages in the amount of $86,016.49, repossession fees of $2,328.31, less sale proceeds of $55,000.00, for a total of $33,344.80, plus accruing interest, late fees, legal costs, and other attorneys' fees.

32.    The above sum has been requested from WOJCIECHOWICZ on numerous occasions, but WOJCIECHOWICZ has failed and refused to pay such sum or any part thereof although payment has been demanded of WOJCIECHOWICZ by VOLVO FINANCIAL.

**WHEREFORE**, Plaintiff, VOLVO FINANCIAL SERVICES, a division of VFS US LLC, a Delaware limited liability company, prays judgment against Defendant IRENEUSZ WOJCIECHOWICZ, individually, in the sum of $33,344.80, plus interest, late fees, costs of this action and attorneys' fees, and such further legal and equitable relief as this Court deems appropriate.

> VOLVO FINANCIAL SERVICES,
> a division of VFS US LLC, a Delaware
> limited liability company,
>
> By: _____
> One of its Attorneys

Patricia E. Rademacher (06205831)
Maysoun B. Iqal (005855)
COSTON & RADEMACHER
105 W. Adams, Suite 1400
Chicago, IL 60603
Telephone: (312) 205-1005



# VOLVO COMMERCIAL FINANCE

**Credit Sales Contract**

**(Security Agreement)**



**Customer No. 7533237　Schedule No.**

**Description of Equipment Purchased and Financed (The "Equipment")**

| Year | Make | Model | VIN/Serial Number* | Attachment/Body |
|------|------|-------|-------------------|-----------------|
| 2006 | Volvo | VNL64T-670 | 4V4NC9TJ56N408368 | |

*Last 4 numeric characters of serial number for construction equipment.

**Address where Equipment will be located:**

1248 Edgewater Ln , Antioch, IL, 60002

**Trade in Description**

Volvo VNL64T-670 ;

**Total Value:** 29,000.00　　　**Total Liens:** 24,000.00

| | | | |
|---|---|---|---|
| 1. | Equipment Cash Sales Price | 116,300.00 | |
| 2. | Net Trade-in Allowance (Net Value – Total Liens) | 5,000.00 | |
| 3. | Subtotal (1-2) | | 111,300.00 |
| 4. | Sales Tax | 0.00 | |
| 5. | Federal Excise Tax (% of 1) | 0.00 | |
| 6. | Guaranteed Auto Protection (GAP) | 0.00 | |
| 7. | Documentation Fees | 30.00 | |
| 8. | Registration/Title Fees | 0.00 | |
| 9. | Other Charges | 20.25 | |
| | Applied Funds | 0.00 | |
| | FL Doc Stamp | | |
| | TN Record Tax | | |
| | MD Record Tax | | |
| 10. | Total Itemized Charges (4 through 9) | 50.25 | |
| 11. | Cash Down Payment | 0.00 | |
| 12. | Amount Financed (3+10-11) | 111,350.25 | |
| 13. | Finance Charge | 29,691.84 | |
| 14. | Total Obligation (12+13) | 141,042.09 | |

Buyer agrees to pay the "Total Obligation" (Item 14) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | Start/Due Date | Payment Amt. | Total |
|---|---|---|---|
| 66 | 07/03/2005 | $2,137.00 | 141,042.09 |

Total No. Payments: 66　　Total Amount: 141,042.09

If shown below, Buyer has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Buyer agrees that such agreements are not part of this Contract.

| | Term (months) | Total Charge |
|---|---|---|
| (Item 6) GAP | 66 | 0.00 |
| (Item 9) Other Charges | 66 | 20.25 |

Seller's Initials: _E.S._
07.04 001TA

-1 (4)

Buyer's Initials: _I.W._　Co-Buyer: _____

 

### Terms of Credit Sales Contract

**Credit Sale:** The below-signed buyer (the "**Buyer**," and if more than one, jointly and severally, the "**Buyer**") has chosen to purchase and hereby purchases on credit the Equipment from the below-signed seller (the "**Seller**") and agrees to pay in full the Total Obligation set forth in Item 14 above. In addition to the Total Obligation, Buyer agrees to pay all other amounts owed to Seller under this Contract (collectively, the "**Indebtedness**") when due.

**Security Interest:** In order to secure payment of the Indebtedness and all other debts and obligations at any time owing from Buyer to Seller and its affiliates, Buyer hereby grants to Seller and its affiliates a security interest in and to the Equipment, together with all present and future attachments, accessions, replacements, parts, repairs, additions, substitutions, chattel paper, and proceeds, including amounts payable under any insurance policies (the "**Collateral**"). Buyer agrees that a photocopy or other reproduction of this Contract or of any financing statement may be filed as a financing statement.

**Assignment and Waiver of Defenses:** Buyer acknowledges receipt of notice that Seller is assigning this Contract immediately upon execution to Volvo Commercial Finance, a division of VFS US LLC whose primary place of business is located in North Carolina ("**Assignee**") and that: (a) Assignee has all of Seller's rights and remedies, and all of Buyer's agreements, representations, and warranties shall be deemed to have been made to Assignee as if Assignee were a party to this Contract; (b) Seller is not Assignee's agent for any purposes; (c) Seller will not have any power or authority to modify any term of this Contract; (d) Buyer will not assert any claims or defenses Buyer may have against Seller or any other party and will settle all claims, defenses, set-offs, and counterclaims it may have against Seller or the manufacturer of the Equipment (the "**Manufacturer**"), including, but not limited to, defects in the Equipment, directly and solely with Seller or the Manufacturer; (e) Assignee may compensate Seller in excess of the Amount Financed in exchange for assignment of this Contract; (f) Assignee's decision to purchase this Contract from Seller relies, in part, upon the warranties and agreements made by Buyer; and (g) all references to "Seller" in this Agreement (other than for purposes of section (d) of this paragraph and the Seller's obligation to sell the Equipment to Buyer) shall be deemed to refer to Assignee and its successors and assigns.

**No Warranties:** THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OTHER THAN THOSE MADE BY THE MANUFACTURER OF THE COLLATERAL. Buyer acknowledges that it is not relying on any representations from Seller (or any other party) relating to financing made under this Contract.

**Buyer's Representations:** Buyer warrants and represents that: (a) Buyer is indebted for the Total Obligation shown in Item 14; (b) except for the security interest granted to Seller and its affiliates, the Equipment will remain free from all liens and security interests; (c) all information supplied by Buyer in any financial, credit, or accounting statement to Seller is and will be true, correct, and genuine, and Buyer consents to the ongoing review of Buyer's credit reports during the term of this Contract; (d) the Equipment is to be used only for business purposes; (e) Buyer has full authority to enter into this Contract and in so doing it is not violating any law, regulation, or agreement and has taken all necessary and appropriate actions to make this Contract binding and enforceable against Buyer in accordance with its terms; and (f) any Equipment traded in is owned by Buyer and free of all security interests and liens except as stated.

**Buyer's Agreements:** Buyer agrees: (a) to defend at its own cost any action, proceeding, or claim affecting the Equipment; (b) to maintain the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and Manufacturer's warranties; (c) to promptly pay all taxes, assessments, license fees, and other public or private charges when levied against the Equipment or this Contract; (d) to obtain a certificate of title and/or, if applicable, a UCC financing statement, on each item of the Equipment showing Seller's first priority security interest and to preserve and perfect that security interest; (e) to not misuse, secrete, sell, rent, lend, encumber, or transfer any of the Equipment nor permit it to be operated by or be in the possession of any other party; (f) that Seller may enter any premises at any reasonable times to inspect the Equipment; (g) to not assign or encumber any of its rights or obligations under this Contract; (h) to provide Seller with quarterly and annual financial statements within 30 and 60 days, respectively, of the end of the applicable period; (i) to reimburse Seller immediately after written notice for any expenses incurred by Seller to perform any of the Obligations of Buyer; and (j) that the Equipment will not be used to transport, dig, load, or haul environmentally hazardous materials, contaminants, or waste products.

**Insurance and Risk of Loss:** All risk of loss, damage, or destruction of the Equipment will at all times be on Buyer. Buyer will keep the Equipment insured at Buyer's expense against liability in an amount as required by Assignee, and against loss or damage by fire, theft, and other customary risks for the Equipment's full insurable value, with a deductible not to exceed $2,500 per item of Equipment. Coverage and insurer will be subject to Seller's reasonable approval, with Seller being named an additional insured and/or loss payee on the policies, as applicable. Each policy will further provide that Seller's interest can not be invalidated by any act, omissions, or neglect of any party other than Seller and that the insurer will give Seller thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Buyer or insurer. Buyer will promptly deliver a copy of each policy or insurance certificate to Seller and proof of renewal at least 30 days prior to expiration or cancellation. If Buyer fails to so insure the Equipment, Seller may purchase such insurance at Buyer's expense, purchase of which need not include liability or protection of Buyer's interest. Buyer hereby irrevocably appoints Seller as Buyer's attorney-in-fact to execute and endorse all documents, checks, or drafts in Buyer's name and to submit any proof of loss to collect such insurance.

**Duty to Pay:** Any warranty, service contract, insurance policy, or other service financed through this Contract is separate and independent of this Contract and is the sole obligation of the issuer of such warranty, service contract, insurance policy, or other service. Buyer shall pay each Installment on time regardless of any claimed defect in the Equipment or any other entity's breach of any warranty, service contract, or insurance policy. Each Installment is due monthly without notice beginning on the "Start/Due Date" and continuing on the same day of each month thereafter.

**Late Charge and Check Charge:** A late charge of 5% of any overdue amount on any Installment will be charged for each Installment not received in full in immediately good funds within fifteen (15) days of its due date. All other Indebtedness due from Buyer to Seller not paid by its respective due date and, upon the occurrence of an Event of Default, the entire unpaid balance of the Total Obligation, will bear interest at the rate of 18% per annum or such lesser rate as is required under applicable law. All payments may at the option of the Seller be applied first to late charges, then to other charges, then to accrued and unpaid finance charges, and last to the unpaid balance of any amount financed. Buyer shall be responsible for and pay to Seller a returned check fee, not to exceed the maximum permitted by applicable law, which fee will be equal to the sum of (i) the actual bank charges incurred by Seller, plus (ii) all other actual costs and expenses incurred by Seller. The returned check fee is payable upon demand as Indebtedness secured by the Collateral under this Contract.

**Events of Default:** Each of the following is an "Event of Default" under this Contract: (a) Buyer fails to pay any Installment to Seller in full when due or fails to make any other payment of the Indebtedness or any other amount due under any other agreement with Seller or any affiliate; (b) Buyer breaches any provision, representation, or warranty of this Contract or any other contract held by, or agreement with Seller or any affiliate; (c) any of the Equipment is lost, severely damaged, destroyed, or seized; (d) Buyer or any guarantor dies, becomes insolvent, ceases to do business in the ordinary course, or has a material adverse change in its management, ownership, or control; (e) a petition in bankruptcy is filed by or against Buyer or any guarantor; (f) Buyer admits its inability to pay its debts as they come due or a receiver is appointed for Buyer or any guarantor; or (g) any guarantor, surety, or endorser for Buyer defaults in any obligation or liability to Seller or any affiliate. Whenever an Event of Default exists under this Contract or any other agreement held by Seller or any affiliate, all debts and contracts, if Seller so elects, will become immediately due and payable.

Seller's Initials: _E.S._

07.04.001TA

-2 (4)

Buyer's Initials: _I.W_   Co-Buyer: _____

**Remedies:** Upon the occurrence of an Event of Default and in addition to all other rights and remedies available under applicable law, Seller may (i) declare this Contract to be in default; (ii) at its option, declare all of the Indebtedness and other debts secured by this Contract immediately due and payable; (iii) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Buyer; (iv) require Buyer to assemble the Collateral and make it available to Seller at a place to be designated by Seller; (v) at the expense of Buyer, make repairs to the Equipment deemed necessary by Seller; and (vi) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses), shall be applied to the Indebtedness or any other indebtedness of Buyer to Seller or any affiliate, and any surplus remaining shall be paid to Buyer or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Seller may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. Seller shall have all of the rights and remedies afforded a secured party under the Uniform Commercial Code as adopted in the State of North Carolina. Buyer agrees that it is liable for and will promptly pay any deficiency resulting from any disposition of Collateral after default. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Seller and its successors and assigns. No liability shall be asserted or enforced against Seller under this Section except for Seller's intentional wrongful acts. Seller may, in its sole discretion, waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default.

**Prepayment:** Buyer may prepay the Total Obligation, in whole or in part, on any Installment Due Date by (i) giving Seller at least thirty (30) days' prior written notice of such prepayment, and (ii) paying to Seller a prepayment premium equal to 5% of the remaining unpaid balance of the Total Obligation (net of unearned Finance Charges), and (iii) paying to Seller the amount of the unpaid balance of the Amount Financed being prepaid on such Installment Due Date, the Installment due on such Installment Due Date, and all other amounts of the Indebtedness then due and remaining unpaid under this Contract. In the event of a default and collection of any amounts subsequent to default, whether or not a payment default has been declared by written notice to Buyer, Buyer shall also be liable for the prepayment fee and unpaid balance as described above.

**Consents and Waivers:** To the extent permitted under applicable law, Buyer expressly consents to and authorizes a court with jurisdiction to issue, without notice, such orders as may be necessary to enforce the terms of this Contract, granting to Seller such powers as Seller shall need to enforce this Contract. Any such court is directed to not require a bond of Seller, the parties agreeing that time is of the essence to protect Seller. To the extent permitted under applicable law, Buyer expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Seller existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, notices shall be in writing, given to Buyer at the address set forth below (or to such other address as provided in writing by Buyer) by registered or certified mail at least ten (10) days before the date of sale and shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Buyer.

**Governing Law:** This Contract is effective when accepted by Assignee at its principal place of business in North Carolina and shall be governed by and construed in accordance with the internal laws of the State of North Carolina without regard to principles of conflict of laws.

**Payments Not to Violate Law:** Nothing herein contained nor any transaction related thereto shall be construed or so operate as to require Buyer to pay a finance charge at a rate greater than it is now lawful in such case to contract for under applicable law, or to make any payment or to do any act contrary to applicable law, and Seller shall reimburse Buyer for any finance charge paid in excess of the highest rate allowed by applicable law or any other payment which may inadvertently be required by Seller to be paid contrary to applicable law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Contract, in whole or in part, then such clauses and provisions only shall be held as though not herein contained, and the remainder of this Contract shall remain operative and in full force and effect.

**Location of Buyer:** If Buyer is (i) a corporation, limited liability company, limited partnership, or other registered organization, its state of organization is in the state set forth below; (ii) an individual, his/her principal place of residence is at the address set forth below; (iii) an organization, its place of business, or if it has more than one place of business, its chief executive office, is located at the address set forth below. Buyer agrees that it will not, without the prior written consent of Seller, change its state of organization if it is a corporation, limited liability company, limited partnership, or other registered organization or the location of its chief executive office or its place of business if it is an organization. If Buyer is an individual, Buyer must notify Seller in writing of a change in his/her principal place of residence 30 days prior to such change.

**Miscellaneous:** To the extent permitted under applicable law, Buyer waives all exemptions, acceptances, presentment, demand for payment, notice of non-payment, protest, notice of protest, notice of dishonor, and all notices in connection with this Contract, filing of suit, and diligence in collecting the Indebtedness or enforcing any provision of this Contract. To the extent any provision of this Contract shall be determined unenforceable under applicable law, such provisions shall be revised to the minimum extent necessary to make such provision enforceable and all of the other provisions shall be enforceable in accordance with their terms. Buyer agrees to pay on demand, all attorneys' fees and all other costs and expenses which may be incurred by Seller in the enforcement of this Contract or in any way arising out of the protection, assertion, or enforcement of this Contract, whether or not suit is brought. Said fees are recoverable whether incurred in any bankruptcy, insolvency, or receivership proceedings. Buyer shall be further liable for all costs and expenses of any nature whatsoever incurred by Seller in any repossession, recovery, storage, repair, sale, release, or other disposition of the property, plus interest on each of the foregoing at the rate of 18% per annum or such lesser rate as is required by applicable law from the date said costs and expenses are incurred. Buyer hereby appoints Seller as agent for the benefit of Buyer and grants Seller an irrevocable power of attorney to (i) correct obvious errors and fill in such blanks as serial numbers, date of first payment, and similar provisions; (ii) take any and all actions and to execute and file all documents, including, but not limited to, UCC financing statements, necessary to establish, maintain, and continue the perfected security interest of Seller in the Collateral and/or give public notice of the interests of Seller in any collateral that may secure any obligations or indebtedness of Buyer to Seller, in the name of and on behalf of Seller, at Buyer's sole cost and expense; and (iii) to endorse Buyer's name to any title application, registration, licensing, and related documents for the purpose of securing certificates of title, registrations, and licenses, if any, issued showing Buyer's interests in and/or ownership of the Collateral and other equipment. This power of attorney is coupled with an interest and is irrevocable during the term of this Contract. Buyer shall take all actions and execute and file all documents reasonably requested by Seller to establish, maintain, and continue the perfected security interest of Seller. Buyer authorizes Seller or any officer, employee, or designee of Seller or any assignee of Seller (or any designee of such assignee) to file a financing statement describing the Collateral, and to file financing statements covering assets of Buyer other than the Collateral, in which assets Buyer grants a security interest to Seller and its affiliates to secure payment of the Indebtedness and all other debts and obligations at any time owing from Buyer to Seller and its affiliates. Buyer shall, within ten (10) days after receipt of notice from Seller, pay all costs and expenses of filing and recording (including the costs of all searches deemed necessary by Seller) to establish, maintain, and determine the validity and priority of Seller's security interest. Any documentation fee may reimburse and/or compensate Seller or Assignee for documenting the transactions contemplated in this Contract and may result in profit to Seller and/or Assignee. The terms "Buyer," "Seller," "Assignee," and "guarantors" shall include heirs, executors, administrators, successors, or assigns of those parties. The headings at the beginning of each section of this Contract are solely for convenience and do not modify any section. Time is of the essence of this Contract.

**Entire Agreement:** This Contract, which Buyer acknowledges reading it in its entirety, together with any written riders or amendments executed by both Buyer and Seller, constitutes the entire agreement between the parties concerning the financing of the Equipment. No modification of this Contract shall be enforceable unless included in a written document duly executed by both Buyer and an officer of Seller.

Seller's Initials: _E. S._

07.04 001TA

-3 (4)

Buyer's Initials: _I. W_  Co-Buyer: _____

 

**NOTICE TO BUYER:** 1. Liability Insurance coverage for bodily injury and property damage is not included in this Contract. 2. Do not sign this Contract before reading or if the Contract is not complete. 3. You are entitled to an exact and completely filled-in copy of the Contract you sign. 4. Keep this Contract to protect your legal rights. 5. See Terms of Credit Sales Contract.

| Seller: S&S Volvo & GMCTruck | Buyer: Ireneusz Wojciechowicz | Co-Buyer: |
|---|---|---|
| Signature *Earl Achaud* | Signature *Ireneusz Wojciechowicz* | Signature |
| Title *President* | Printed Name and Title(s) IRENEUSZ WOJCIECHOWICZ | Printed Name and Title(s) |
| Date 06/03/2005 | Date 06/03/2005 | Date 06/03/2005 |

**Seller's Name & Address:**

Name: S&S Volvo & GMCTruck

Street Address (Place of Business): 2600 St. Johns Road   Lima OH 45804

Mailing Address: 2600 St. Johns Road

Telephone: 419-228-2211    Seller Code: 5142D

**Buyer(s) Name & Address**

Legal Name(s): Ireneusz Wojciechowicz

Street Address (Place of Business): 1248 Edgewater Ln , Antioch, IL, 60002

Mailing Address: 1248 Edgewater Ln , Antioch, IL., 60002

Telephone: 847-395-2743 Fax:

Federal ID# / SSN: 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    Co-buyer Federal ID# / SSN:

State of Formation: N/A   or State of Residence: IL    County:

Seller's Initials: *E.S*
07.04 001TA

-4 (4)

Buyer's Initials: *I.W* Co-Buyer:



# VOLVO COMMERCIAL FINANCE

**Assignment**
**(Credit Sales Contract)**

| NAME AND ADDRESS OF BUYER | |
|---|---|
| Legal Name: | Ireneusz Wojciechowicz |
| Street Address: | 1248 Edgewater Ln |
| City: | Antioch | State: IL | Zip: 60002 |

Enter specified Equipment information below, or contract Number, if known:

| CUSTOMER NO. | 7533237 | SCHEDULE NO. | |
|---|---|---|---|

In accordance with and subject to all of the terms and conditions set forth in Dealer's existing Retail Finance Plan Agreement (the "Agreement") and as assigned to VFS US LLC (the "Company"), which Agreement is hereby incorporated by reference, the undersigned dealer as ("Assignor" or "Dealer"), for value received, hereby sells, assigns, and transfers the Credit Sales Contract, to which this Assignment has been affixed (the "Contract"), to Company, together with all rights and interests of the undersigned in the Equipment and other collateral described in said Contract, and hereby reaffirms its representations, warranties, and covenants contained in the Agreement as of the date of this Assignment. In connection with its obligations under the Agreement to provide Company with a perfected security interest, or good title, in the units, Dealer hereby agrees that such obligations shall apply throughout the term of the Contract, and with respect to construction equipment: (i) Dealer will give Company notice if Customer requests an MSO for any unit or if Dealer delivers an MSO to Customer; and (ii) Dealer will ask Customer whether Customer intends to title a unit prior to giving Customer an MSO, and will advise Company of such intention in writing. Dealer acknowledges that the Commission or finance participation rate, as applicable, paid for this Assignment is $ 1,433.41 and that the annual rate of interest used to calculate the Finance Charge in Item 14 of the Contract is 8.85%.

| Year | Make | Model | VIN/Serial Number | Attachments/Body |
|---|---|---|---|---|
| 2006 | Volvo | VNL64T-670 | 4V4NC9TJ56N408368 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

This assignment is made: {Check One}

( ) **Without Recourse**, except as to Assignor's covenants, representations, and warranties contained in the Agreement and to the extent of Commission or finance participation rate, as applicable, and other compensation received by Assignor.

( ) **With Full Recourse.** (Full guaranty of Assignor.) In addition to its covenants, representations, and warranties contained in the Agreement, after the occurrence of an Event of Default under the Contract, Dealer unconditionally guarantees and promises to pay upon demand the full amount of Total Obligation (as defined in the Contract) remaining unpaid, including all legal and repossession costs incurred by Company, regardless of whether Company has repossessed the Equipment described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

( ) **With Limited Recourse.** In addition to its covenants, representations, and warranties contained in the Agreement and the Commission or finance participation rate, as applicable, Assignor is responsible for payment of an amount equal to 0 percent of the Total Obligation due under the Contract as of the date of the occurrence of the Event of Default.

( ) **With Other Recourse.** In addition to its covenants, representations, and warranties contained in the Agreement and the Commission or finance participation rate, as applicable, Assignor is responsible for $ .

Dealer subsidy (if applicable). Dealer is responsible for a sum of $0.00 to be used to reduce the Customer's interest rate on the Contract. The subsidy is to be paid in a single advance payment.

**THIS ASSIGNMENT is made by Dealer as of 06/03/2005.**

Dealer: S&S Volvo & GMC Truck

By (Signature): *Earl Schaub*

Print/Type Name: *Earl Schaub*

Title: *President*

Accepted by: Volvo Commercial Finance, a division of VFS US LLC

By (Signature): *Melissa Garland*

Print/Type Name: *Melissa Garland*

Servicing Agent

Assign07.004 TA



## DEFICIENCY BALANCE CALCULATION

CUSTOMER'S NAME:  **Ireneusz Wojciechowicz**          CONTRACT NUMBER:  **500-7533237-001**

| Buyout Date: | 9/17/2007 | Vin # | 4V4NC9TJ56N408368 | Amt: | $ | 88,536.90 |
|---|---|---|---|---|---|---|
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |

TOTAL BUYOUT AMT:                                                              $      88,536.90

Plus:

| Repossession Fees | $ | 1,050.00 | | |
|---|---|---|---|---|
| Storage | $ | - | | |
| Commission | $ | - | | |
| Inspection Fees | $ | 300.00 | | |
| Cleaning Fee | $ | - | | |
| Repairs/Mechanic's Lien | $ | - | | |
| Transportation | $ | 498.25 | | |
| Other | $ | - | | |
| TOTAL FEES | | | $ | 1,848.25 |

Minus

| Gross Sales Proceeds: | $ | 43,250.00 | | |
|---|---|---|---|---|
| Guarantor Payment | $ | - | | |
| Insurance: | $ | - | | |
| TOTAL DEDUCTIONS | | | $ | 43,250.00 |
| | | | | |
| Customer's Deficiency Balance | | | $ | 47,135.15 |

Completed by:                          Tammie Reynolds                    Date:      9/18/2007

---

**State Of North Carolina**

**County Of Guilford**

Sworn & subscribed before me this _____ day of _____ _____, 200___,
by _____, (I have personal knowledge of the identity of
the principal)

Notary Public
My Commission Expires:  _____

Page 1 of 1



# VOLVO

## Volvo Financial Services

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: September 11, 2007

Lessee Name: Ireneusz Wojciechowicz

Account#: 500-7533237-001

| Year: | 2006 | Model: | VNL64T-670 |
|-------|------|--------|------------|
| Make: | VOLVO | Vin: | 4V4NC9TJ56N408368 |

#### Sold To

| | | | |
|---|---|---|---|
| Sale Date: | September 11, 2007 | Sale Price: | 43250.00 |
| Contact Name: | Darren or Darrell Fischer | Purchaser Repair : | 0.00 |
| Company Name: | Fischer Sales | Purchaser Sales Commission : | 0.00 |
| Address: | 1785 E. 1400 North Road | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Watseka IL 60970- | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 43250.00 |

#### Non Sales Related Fees

| | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 1050.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 0.00 |
| Transportation : | 498.25 | Cleaning Fee : | 0.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 0.00 |
| | | Total Fees: | 1848.25 |

#### Remarketing Internal Data

| | | | |
|---|---|---|---|
| NI / Contract: | 85559.89 | Book Value: | 50850.00 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 85559.89 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 50850.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts



# VOLVO COMMERCIAL FINANCE

**Credit Sales Contract**

(Security Agreement)

Customer No. 7533237    Schedule No.

**Description of Equipment Purchased and Financed (The "Equipment")**

| Year | Make | Model | VIN/Serial Number* | Attachment/Body |
|------|------|-------|--------------------|-----------------|
| 2005 | Volvo | VNL64T-670 | 4V4NC9TK65N394651 | |

*Last 4 numeric characters of serial number for construction equipment.

**Address where Equipment will be located:**

1248 Edgewater Ln , ANTIOCH, IL, 60002

**Trade In Description**

Volvo VNL64T-610 ;

**Total Value: 10,000.00**        **Total Liens: 5,000.00**

| | | | |
|---|---|---|---|
| 1. | Equipment Cash Sales Price | 113,500.00 | |
| 2. | Net Trade-In Allowance (Net Value – Total Liens) | 5,000.00 | |
| 3. | Subtotal (1-2) | | 108,500.00 |
| 4. | Sales Tax | 0.00 | |
| 5. | Federal Excise Tax (% of 1) | 0.00 | |
| 6. | Guaranteed Auto Protection (GAP) | 0.00 | |
| 7. | Documentation Fees | 30.00 | |
| 8. | Registration/Title Fees | 0.00 | |
| 9. | Other Charges | 20.25 | |
| | Applied Funds | 0.00 | |
| | FL Doc Stamp | | |
| | TN Record Tax | | |
| | MD Record Tax | | |
| 10. | Total Itemized Charges | (4 through 9) | 50.25 |
| 11. | Cash Down Payment | | 3,500.00 |
| 12. | Amount Financed | (3+10-11) | 105,050.25 |
| 13. | Finance Charge | | 34,205.59 |
| 14. | Total Obligation | (12+13) | 139,255.84 |

Buyer agrees to pay the "Total Obligation" (Item 14) in accordance with the following schedule (and any additional page(s) of schedule attached):

| No. of Installments | Start/Due Date | Payment Amt. | Total |
|---|---|---|---|
| 66 | 08/11/2005 | $2,109.94 | 139,255.84 |
| Total No. Payments: 66 | | Total Amount: 139,255.84 | |

If shown below, Buyer has elected to finance certain services through this Contract. The terms of each service are contained in separate agreement(s), and Buyer agrees that such agreements are not part of this Contract.

| | Term (months) | Total Charge |
|---|---|---|
| (Item 6) GAP | 66 | 0.00 |
| (Item 9) Other Charges | 66 | 20.25 |

Seller's Initials: _E, S,_
07.04 001TA

-1 (4)

Buyer's Initials: _I.W_    Co-Buyer: _____

 **Terms of Credit Sales Contract** 

**Credit Sale:** The below-signed buyer (the "Buyer," and if more than one, jointly and severally, the "Buyer") has chosen to purchase and hereby purchases on credit the Equipment from the below-signed seller (the "Seller") and agrees to pay in full the Total Obligation set forth in item 14 above. In addition to the Total Obligation, Buyer agrees to pay all other amounts owed to Seller under this Contract (collectively, the "Indebtedness") when due.

**Security Interest:** In order to secure payment of the Indebtedness and all other debts and obligations at any time owing from Buyer to Seller and its affiliates, Buyer hereby grants to Seller and its affiliates a security interest in and to the Equipment, together with all present and future attachments, accessions, replacements, parts, repairs, additions, substitutions, chattel paper, and proceeds, including amounts payable under any insurance policies (the "Collateral"). Buyer agrees that a photocopy or other reproduction of this Contract or of any financing statement may be filed as a financing statement.

**Assignment and Waiver of Defenses:** Buyer acknowledges receipt of notice that Seller is assigning this Contract immediately upon execution to Volvo Commercial Finance, a division of VFS US LLC whose primary place of business is located in North Carolina ("Assignee") and that: (a) Assignee has all of Seller's rights and remedies, and all of Buyer's agreements, representations, and warranties shall be deemed to have been made to Assignee as if Assignee were a party to this Contract; (b) Seller is not Assignee's agent for any purposes; (c) Seller will not have any power or authority to modify any term of this Contract; (d) Buyer will not assert any claims or defenses Buyer may have against Seller or any other party and will settle all claims, defenses, set-offs, and counterclaims it may have against Seller or the manufacturer of the Equipment (the "Manufacturer"), including, but not limited to, defects in the Equipment, directly and solely with Seller or the Manufacturer; (e) Assignee may compensate Seller in excess of the Amount Financed in exchange for assignment of this Contract; (f) Assignee's decision to purchase this Contract from Seller relies, in part, upon the warranties and agreements made by Buyer; and (g) all references to "Seller" in this Agreement (other than for purposes of section (d) of this paragraph and the Seller's obligation to sell the Equipment to Buyer) shall be deemed to refer to Assignee and its successors and assigns.

**No Warranties:** THERE ARE NO WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OTHER THAN THOSE MADE BY THE MANUFACTURER OF THE COLLATERAL. Buyer acknowledges that it is not relying on any representations from Seller (or any other party) relating to financing made under the Contract.

**Buyer's Representations:** Buyer warrants and represents that: (a) Buyer is indebted for the Total Obligation shown in item 14; (b) except for the security interest granted to Seller and its affiliates, the Equipment will remain free from all liens and security interests; (c) all information supplied by Buyer in any financial, credit, or accounting statement to Seller is and will be true, correct, and genuine, and Buyer consents to the ongoing review of Buyer's credit reports during the term of this Contract; (d) the Equipment is to be used only for business purposes; (e) Buyer has full authority to enter into this Contract and in so doing it is not violating any law, regulation, or agreement and has taken all necessary and appropriate actions to make this Contract binding and enforceable against Buyer in accordance with its terms; and (f) any Equipment traded in is owned by Buyer and free of all security interests and liens except as stated.

**Buyer's Agreements:** Buyer agrees: (a) to defend at its own cost any action, proceeding, or claim affecting the Equipment; (b) to maintain the Equipment in good operating condition, repair, and appearance, all in conformity with all governmental regulations, insurance policies, and Manufacturer's warranties; (c) to promptly pay all taxes, assessments, license fees, and other public or private charges when levied against the Equipment or this Contract; (d) to obtain a certificate of title and/or, if applicable, a UCC financing statement, on each item of the Equipment showing Seller's first priority security interest and to preserve and perfect that security interest; (e) to not misuse, secrete, sell, rent, lend, encumber, or transfer any of the Equipment nor permit it to be operated by or be in the possession of any other party; (f) that Seller may enter any premises at any reasonable times to inspect the Equipment; (g) to not assign or encumber any of its rights or obligations under this Contract; (h) to provide Seller with quarterly and annual financial statements within 30 and 90 days, respectively, of the end of the applicable period; (i) to reimburse Seller immediately after written notice for any expenses incurred by Seller to perform any of the Obligations of Buyer; and (j) that the Equipment will not be used to transport, dig, load, or haul environmentally hazardous materials, contaminants, or waste products.

**Insurance and Risk of Loss:** All risk of loss, damage, or destruction of the Equipment will at all times be on Buyer. Buyer will keep the Equipment insured at Buyer's expense against liability in an amount as required by Assignee, and against loss or damage by fire, theft, and other customary risks for the Equipment's full insurable value, with a deductible not to exceed $2,500 per item of Equipment. Coverage and insurer will be subject to Seller's reasonable approval, with Seller being named as additional insured and/or loss payee on the policies, as applicable. Each policy will further provide that Seller's interest can not be invalidated by any act, omissions, or neglect of any party other than Seller and that the insurer will give Seller thirty (30) days' advance written notice of any policy cancellation or non-renewal, whether such cancellation or non-renewal is at the direction of Buyer or insurer. Buyer will promptly deliver a copy of each policy or insurance certificate to Seller and proof of renewal at least 30 days prior to expiration or cancellation. If Buyer fails to so insure the Equipment, Seller may purchase such insurance at Buyer's expense, purchase of which need not include liability or protection of Buyer's interest. Buyer hereby irrevocably appoints Seller as Buyer's attorney-in-fact to execute and endorse all documents, checks, or drafts in Buyer's name and to submit any proof of loss to collect such insurance.

**Duty to Pay:** Any warranty, service contract, insurance policy, or other service financed through this Contract is separate and independent of this Contract and is the sole obligation of the issuer of such warranty, service contract, insurance policy, or other service. Buyer shall pay each installment on time regardless of any claimed defect in the Equipment or any other entity's breach of any warranty, service contract, or insurance policy. Each installment is due monthly without notice beginning on the "Start/Due Date" and continuing on the same day of each month thereafter.

**Late Charge and Check Charge:** A late charge of 5% of any installment or any installment not received in full in immediately good funds within fifteen (15) days of its due date. All other indebtedness due from Buyer to Seller not paid by its respective due date and, upon the occurrence of an Event of Default, the entire unpaid balance of the Total Obligation, will bear interest at the rate of 18% per annum or such lesser rate as is required under applicable law. All payments may at the option of the Seller be applied first to late charges, then to other charges, then to accrued and unpaid finance charges, and last to the unpaid balance of any amount financed. Buyer shall be responsible for and pay to Seller a returned check fee, not to exceed the maximum permitted by applicable law, which fee will be equal to the sum of (i) the actual bank charges incurred by Seller, plus (ii) all other actual costs and expenses incurred by Seller. The returned check fee is payable upon demand as indebtedness secured by the Collateral under this Contract.

**Events of Default:** Each of the following is an "Event of Default" under this Contract: (a) Buyer fails to pay any installment to Seller in full when due or fails to make any other payment of the Indebtedness or any other amount due under any other agreement with Seller or any affiliate; (b) Buyer breaches any provision, representation, or warranty of this Contract or any other contract held by, or agreement with Seller or any affiliate; (c) any of the Equipment is lost, severely damaged, destroyed, or seized; (d) Buyer or any guarantor dies, becomes insolvent, ceases to do business in the ordinary course, or has a material adverse change in its management, ownership, or control; (e) a petition in bankruptcy is filed by or against Buyer or any guarantor; (f) Buyer admits its inability to pay its debts as they come due or a receiver is appointed for Buyer or any guarantor; or (g) any guarantor, surety, or endorser for Buyer defaults in any obligation or liability to Seller or any affiliate. Whenever an Event of Default exists under this Contract or any other agreement held by Seller or any affiliate, all debts and contracts, if Seller so elects, will become immediately due and payable.

Seller's Initials: _E.S.c._                                            Buyer's Initials: _I.W._ Co-Buyer: _____
07.04 001TA                                    -2 (4)

**Remedies:** Upon the occurrence of any Event of Default and in addition to all other rights and remedies available under applicable law, Seller may (i) declare this Contract to be in default; (ii) at its option, declare all of the Indebtedness and other debts secured by this Contract immediately due and payable; (iii) without notice or demand or legal process, take possession of the Collateral wherever located and, for this purpose, may enter upon the property occupied or under the control of Buyer; (iv) require Buyer to assemble the Collateral and make it available to Seller at a place to be designated by Seller; (v) at the expense of Buyer, make repairs to the Equipment deemed necessary by Seller; and (vi) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s). The proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses), shall be applied to the Indebtedness or any other Indebtedness of Buyer to Seller or any affiliate, and any surplus remaining shall be paid to Buyer or to any other party who may be legally entitled to such surplus. At any sale or disposition, and as permitted by law, Seller may purchase any or all of the Collateral and/or accept a trade of property for all or any portion of the purchase price. Seller shall have all of the rights and remedies afforded a secured party under the Uniform Commercial Code as adopted in the State of North Carolina. Buyer agrees that it is liable for and will promptly pay any deficiency resulting from any disposition of Collateral after default. All rights and remedies are cumulative, not alternative, and shall inure to the benefit of Seller and its successors and assigns. No liability shall be asserted or enforced against Seller under this Section except for Seller's intentional wrongful acts. Seller may, in its sole discretion, waive an Event of Default or allow a cure of an Event of Default. Any waiver will not constitute a waiver of any other Event of Default.

**Prepayment:** Buyer may prepay the Total Obligation, in whole or in part, on any Installment Due Date by (i) giving Seller at least thirty (30) days' prior written notice of such prepayment, and (ii) paying to Seller a prepayment premium equal to 5% of the remaining unpaid balance of the Total Obligation (net of unearned Finance Charges), and (iii) paying to Seller the amount of the unpaid balance of the Amount Financed being prepaid on such Installment Due Date, the Installment due on such Installment Due Date, and all other amounts of the Indebtedness then due and remaining unpaid under this Contract. In the event of a default and collection of any amounts subsequent to default, whether or not a payment default has been declared by written notice to Buyer, Buyer shall also be liable for the prepayment fee and unpaid balance as described above.

**Consents and Waivers:** To the extent permitted under applicable law, Buyer expressly consents to and authorizes a court with jurisdiction to issue, without notice, such orders as may be necessary to enforce the terms of this Contract, granting to Seller such powers as Seller shall need to enforce this Contract. Any such court is directed that it would not require a bond of Seller, the parties agreeing that time is of the essence to protect Seller. To the extent permitted under applicable law, Buyer expressly waives any notice of sale or other disposition of the Collateral and of any other exercise of any right or remedy of Seller existing after the occurrence of an Event of Default; and that to the extent that such notices cannot be waived, notices shall be in writing, given to Buyer at the address set forth below (or to such other address as provided in writing by Buyer) by registered or certified mail at least ten (10) days before the date of sale and shall be deemed reasonable and to fully satisfy the requirement for the giving of notice to Buyer.

**Governing Law:** This Contract is effective when accepted by Assignee at its principal place of business in North Carolina and shall be governed by and construed in accordance with the internal laws of the State of North Carolina without regard to principles of conflict of laws.

**Payments Not to Violate Law:** Nothing herein contained nor any transaction related thereto shall be construed or so operate as to require Buyer to pay a finance charge at a rate greater than it is now lawful in such case to contract for under applicable law, or to make any payment or to do any act contrary to applicable law, and Seller shall reimburse Buyer for any finance charge paid in excess of the highest rate allowed by applicable law or any other payment which may inadvertently be required by Seller to be paid contrary to applicable law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Contract, in whole or in part, then such clauses and provisions only shall be held as though not herein contained, and the remainder of this Contract shall remain operative and in full force and effect.

**Location of Buyer:** If Buyer is (i) a corporation, limited liability company, limited partnership, or other registered organization, its state of organization is in the state set forth below; (ii) an individual, his/her principal place of residence is at the address set forth below; (iii) an organization, its place of business, or if it has more than one place of business, its chief executive office, is located at the address set forth below. Buyer agrees that it will not, without the prior written consent of Seller, change its state of organization if it is a corporation, limited liability company, limited partnership, or other registered organization or the location of its chief executive office, or its place of business if it is an organization. If Buyer is an individual, Buyer must notify Seller in writing of a change in his/her principal place of residence 30 days prior to such change.

**Miscellaneous:** To the extent permitted under applicable law, Buyer waives all exemptions, acceptances, presentment, demand for payment, notice of non-payment, protest, notice of protest, notice of dishonor, and all notices in connection with this Contract, filing of suit, and diligence in collecting the Indebtedness or enforcing any provision of this Contract. To the extent any provision of this Contract shall be determined unenforceable under applicable law, such provisions shall be revised to the minimum extent necessary to make such provision enforceable and all of the other provisions shall be enforceable in accordance with their terms. Buyer agrees to pay on demand, all attorneys' fees and all other costs and expenses which may be incurred by Seller in enforcement of this Contract or in any way arising out of the protection, assertion, or enforcement of this Contract, whether or not suit is brought. Said fees are recoverable whether incurred in any bankruptcy, insolvency, or receivership proceedings. Buyer shall be further liable for all costs and expenses of any nature whatsoever incurred by Seller in any repossession, recovery, storage, repair, sale, release, or other disposition of the property, plus interest on each of the foregoing at the rate of 18% per annum or such lesser rate as is required by applicable law from the date said costs and expenses are incurred. Buyer hereby appoints Seller as agent for the benefit of Buyer and grants Seller an irrevocable power of attorney to (i) correct obvious errors and fill in such blanks as serial numbers, date of first payment, and similar provisions; (ii) take any and all actions and to execute and file all documents, including, but not limited to, UCC financing statements, necessary to establish, maintain, and continue the perfected security interest of Seller in the Collateral and/or give public notice of the interests of Seller in any collateral that may secure any obligations or indebtedness of Buyer to Seller, in the name of and on behalf of Seller, at Buyer's sole cost and expense; and (iii) to endorse Buyer's name to any title application, registration, licensing, and related documents for the purpose of securing certificates of title, registrations, and licenses, if any, issued showing Buyer's interests in and/or covering of the Collateral and other equipment. This power of attorney is coupled with an interest and is irrevocable during the term of this Contract. Buyer shall take all actions and execute and file all documents reasonably requested by Seller to establish, maintain, and continue the perfected security interest of Seller. Buyer authorizes Seller or any officer, employee, or designee of Seller or any designee of Seller (or any designee of such assignee) to file a financing statement describing the Collateral, and to file financing statements covering assets of Buyer other than the Collateral, in which assets Buyer grants a security interest to Seller and its affiliates to secure payment of the Indebtedness and all other debts and obligations at any time owing from Buyer to Seller and its affiliates. Buyer shall, within ten (10) days after receipt of notice from Seller, pay all costs and expenses of filing and recording (including documentation fee may reimburse and/or compensate Seller or Assignee for documenting the transactions contemplated in this Contract and may result in profit to Seller and/or Assignee. The terms "Buyer", "Seller", "Assignee," and "guarantors" shall include heirs, executors, administrators, successors, or assigns of those parties. The headings at the beginning of each section of this Contract are solely for convenience and do not modify any section. Time is of the essence of this Contract.

**Entire Agreement:** This Contract, which Buyer acknowledges reading it in its entirety, together with any written riders or amendments executed by both Buyer and Seller, constitutes the entire agreement between the parties concerning the financing of the Equipment. No modification of this Contract shall be enforceable unless included in a written document duly executed by both Buyer and an officer of Seller.

Seller's Initials: E. S.
07.04 001TA

Buyer's Initials: I.W.    Co-Buyer: _____

-3 (4)

**NOTICE TO BUYER:** 1. Liability Insurance coverage for bodily injury and property damage is not included in this Contract. 2. Do not sign this Contract before reading or if the Contract is not complete. 3. You are entitled to an exact and completely filled-in copy of the Contract you sign. 4. Keep this Contract to protect your legal rights. 5. See Terms of Credit Sales Contract.

| Seller: S&S Volvo & GMCTruck | Buyer: Ireneusz Wojciechowicz | Co-Buyer: |
|---|---|---|
| Signature *Earl Schaub* | Signature *IRENEUSZ WOJYECHOWIC* | Signature |
| Title *President* | Printed Name and Title(s) *president* | Printed Name and Title(s) |
| Date 07/11/2005 | Date 07/11/2005 | Date 07/11/2005 |

**Seller's Name & Address:**

Name: S&S Volvo & GMCTruck

Street Address (Place of Business): 2600 St. Johns Road   Lima OH 45804

Mailing Address: 2600 St. Johns Road

Telephone: 419-228-2211        Seller Code:  5142D

**Buyer(s) Name & Address**

Legal Name(s):  Ireneusz Wojciechowicz

Street Address (Place of Business):  1248 Edgewater Ln , ANTIOCH, IL, 60002

Mailing Address:  1248 Edgewater Ln , ANTIOCH, IL, 60002

Telephone:  847-395-2743 Fax:

Federal ID# / SSN: 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        Co-buyer Federal ID# / SSN:

State of Formation:  N/A    or State of Residence:  IL    County:  LAKE

Seller's Initials: *E. S.*
07.04.001TA

-4 (4)

Buyer's Initials: *I.W.*  Co-Buyer:_____



# VOLVO COMMERCIAL FINANCE

**Assignment**
**(Credit Sales Contract)**

| NAME AND ADDRESS OF BUYER | | | |
|---|---|---|---|
| Legal Name: | Ireneusz Wojciechowicz | | |
| Street Address: | 1248 Edgewater Ln | | |
| City: | ANTIOCH | State: IL | Zip: 60002 |
| | Enter specified Equipment information below, or contract Number, if known: | | |
| **CUSTOMER NO.** | 7533237 | **SCHEDULE NO.** | |

In accordance with and subject to all of the terms and conditions set forth in Dealer's existing Retail Finance Plan Agreement (the "Agreement") and as assigned to VFS US LLC (the "Company"), which Agreement is hereby incorporated by reference, the undersigned dealer as ("Assignor" or "Dealer"), for value received, hereby sells, assigns, and transfers the Credit Sales Contract, to which this Assignment has been affixed (the "Contract"), to Company, together with all rights and interests of the undersigned in the Equipment and other collateral described in said Contract, and hereby reaffirms its representations, warranties, and covenants contained in the Agreement as of the date of this Assignment. In connection with its obligations under the Agreement to provide Company with a perfected security interest, or good title, in the units, Dealer hereby agrees that such obligations shall apply throughout the term of the Contract, and with respect to construction equipment: (i) Dealer will give Company notice if Customer requests an MSO for any unit or if Dealer delivers an MSO to Customer; and (ii) Dealer will ask Customer whether Customer intends to title a unit prior to giving Customer an MSO, and will advise Company of such intention in writing. Dealer acknowledges that the Commission or finance participation rate, as applicable, paid for this Assignment is $ 660.48 and that the annual rate of interest used to calculate the Finance Charge in Item 14 of the Contract is 10.65%.

| Year | Make | Model | VIN/Serial Number | Attachments/Body |
|---|---|---|---|---|
| 2005 | Volvo | VNL64T-670 | 4V4NC9TK65N394651 | |
| | | | | |
| | | | | |
| | | | | |

This assignment is made: (Check One)

*E.S.* (X)     **Without Recourse**, except as to Assignor's covenants, representations, and warranties contained in the Agreement and to the extent of Commission or finance participation rate, as applicable, and other compensation received by Assignor.

( )     **With Full Recourse.** (Full guaranty of Assignor.) In addition to its covenants, representations, and warranties contained in the Agreement, after the occurrence of an Event of Default under the Contract, Dealer unconditionally guarantees and promises to pay upon demand the full amount of Total Obligation (as defined in the Contract) remaining unpaid, including all legal and repossession costs incurred by Company, regardless of whether Company has repossessed the Equipment described in said Contract. Further obligations of the undersigned are set forth in the Agreement.

( )     **With Limited Recourse.** In addition to its covenants, representations, and warranties contained in the Agreement and the Commission or finance participation rate, as applicable, Assignor is responsible for payment of an amount equal to 0 percent of the Total Obligation due under the Contract as of the date of the occurrence of the Event of Default.

( )     **With Other Recourse.** In addition to its covenants, representations, and warranties contained in the Agreement and the Commission or finance participation rate, as applicable, Assignor is responsible for $ .

Dealer subsidy (if applicable). Dealer is responsible for a sum of $0.00 to be used to reduce the Customer's interest rate on the Contract. The subsidy is to be paid in a single advance payment.

**THIS ASSIGNMENT is made by Dealer as of 07/11/2005.**

| | |
|---|---|
| Dealer:   S&S Volvo & GMC Truck | Accepted by: Volvo Commercial Finance, a division of VFS US LLC |
| By (Signature): _Earl Schaub_ | By (Signature): _____ |
| Print/Type Name: _Earl Schaub_ | Print/Type Name: _____ |
| Title: _President_ | Servicing Agent |

Assign07.004 TA





## DEFICIENCY BALANCE CALCULATION

CUSTOMER'S NAME: **Ireneusz Wojciechowicz**          CONTRACT NUMBER: **500-7533237-002**

| | | | | | | |
|---|---|---|---|---|---|---|
| Buyout Date: | 8/24/2007 | Vin # | 4V4NC9TK65N394651 | Amt: | $ | 86,016.49 |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |
| Buyout Date: | | Vin # | | Amt: | | |

TOTAL BUYOUT AMT:                                              $     86,016.49

Plus:

| | | |
|---|---|---|
| Repossession Fees | $ | 1,050.00 |
| Storage | $ | - |
| Commission | $ | - |
| Inspection Fees | $ | 300.00 |
| Cleaning Fee | $ | 650.00 |
| Repairs/Mechanic's Lien | $ | 27.67 |
| Transportation | $ | 255.00 |
| Other (Fuel/Tolls) | $ | 45.64 |
| TOTAL FEES | $ | 2,328.31 |

Minus

| | | |
|---|---|---|
| Gross Sales Proceeds: | $ | 55,000.00 |
| Guarantor Payment | $ | - |
| Insurance: | $ | - |
| TOTAL DEDUCTIONS | $ | 55,000.00 |

Customer's Deficiency Balance                          $     33,344.80

Completed by:                     Tammie Reynolds                     Date:          8/28/2007

---

**State Of North Carolina**

**County Of Guilford**

Sworn & subscribed before me this _____ day of _____, 200__,
by _____, (I have personal knowledge of the identity of
the principal)

Notary Public
My Commission Expires: _____

Page 1 of 1



# VOLVO

## Volvo Financial Services

7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, NC 27402-6131

Telephone: (877) 865-8623 ext 4277
Fax: (336) 931-3999

### Account Reconciliation Report

Date: August 24, 2007

Lessee Name: Ireneusz Wojciechowicz

Account#: 500-7533237-002

| Year: | 2005 | Model: | VNL64T-670 |
|---|---|---|---|
| Make: | VOLVO | Vin: | 4V4NC9TK65N394651 |

### Sold To

| | | | |
|---|---|---|---|
| Sale Date: | August 24, 2007 | Sale Price: | 55000.00 |
| Contact Name: | Jordan Tenney | Purchaser Repair : | 0.00 |
| Company Name: | Twin Cities Mack Sales & Service, Inc. | Purchaser Sales Commission : | 0.00 |
| Address: | 2195 West County Rd C2 | Purchaser Other : | 0.00 |
| Address: | | Purchaser Cleaning : | 0.00 |
| City, State, Zip | Roseville MN 55113 | Purchaser Transportation : | 0.00 |
| | | Net Sale Price: | 55000.00 |

### Non Sales Related Fees

| | | | |
|---|---|---|---|
| Sales Commissions : | 0.00 | Inspection : | 300.00 |
| Repo Fee : | 1050.00 | Storage Fee : | 0.00 |
| Attorney Fee : | 0.00 | Repairs : | 27.67 |
| Transportation : | 255.00 | Cleaning Fee : | 650.00 |
| Fee Paid Out : | 0.00 | Other Fees : | 45.64 |
| | | Total Fees: | 2328.31 |

### Remarketing Internal Data

| | | | |
|---|---|---|---|
| NI / Contract: | 83477.83 | Book Value: | 58929.00 |
| Cost % per Asset: | 100.00% | Engine Add/Deduct: | 0.00 |
| | | Trans Add/Deduct: | 0.00 |
| NI / Asset: | 83477.83 | Mileage Add/Deduct: | 0.00 |
| | | Atthment Add/Deduct: | 0.00 |
| | | Body Add/Deduct: | 0.00 |
| | | Total: | 58929.00 |

**Disposition Code for Cash Application to use:**
- 001 Casualty Loss - for insurance losses
- 004 Completed Term - use for end of term dispositions
- 005 Inventory - for inventoried units
- 006 Workout - for modifications
- 007 Refinance - for refinances
- 008 Repo - use for ALL repossession accounts